**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **BRADLEY SMITH** | : | **CRIMINAL ACTION 6:13-cr-52** |
| **B.O.P. #16254-035** | | **CIVIL ACTION 6:16-cv-504** |
| **VERSUS** | : | **JUDGE FOOTE** |
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

Before the court on referral from the district court for Report and Recommendation pursuant to 28 U.S.C. § 636 is a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Rec. Doc. 205], Motion for Discovery [Rec. Doc. 222], and Motion for Evidentiary Hearing [Rec. Doc. 224], filed by petitioner Bradley Smith ("Smith"). For reasons stated below, **IT IS RECOMMENDED** that the motions be **DENIED**.

### I.
### BACKGROUND

#### A. Conviction

On February 14, 2013, Smith was charged by indictment in this Court with one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and three counts of receiving child pornography, in violation in

violation of 18 U.S.C. § 2252(a)(2)(A).[1] [Rec. Doc. 1]. Smith appeared with privately retained counsel at arraignment on February 20, 2013. [Rec. Doc. 8]. Following that attorney's request to withdraw, however, the Office of the Federal Public Defender was appointed and assistant federal public defender Wayne Blanchard enrolled as counsel on March 14, 2013. [Rec. Docs. 22, 23]. Smith expressed dissatisfaction and disagreement with his public defender in letters to the Court. [Rec. Doc. 44; rec. doc. 85, p. 4]. Following a hearing on September 19, 2014, the Court granted Smith's oral motion for new counsel, relieving Blanchard and appointing attorney Randal McCann to the defense. [Rec. Docs. 91, 102].

On February 25, 2015, Smith entered into a plea agreement by which he agreed to plead guilty to one count of possession of child pornography in exchange for the Government's promise to dismiss the remaining counts of the superseding indictment. [Rec. Doc. 109]. Smith's guilty plea was accepted by the Court on March 24, 2015. [Rec. Doc. 112]. On April 13, 2015, however, the Court received a *pro se* Motion to Withdraw Guilty Plea. [Rec. Doc. 113]. The Court granted the motion at a hearing on June 12, 2015, and a trial date was set. [Rec. Doc. 124].

The case proceeded to a jury trial on July 13, 2015. [Rec. Doc. 130]. After forty-five minutes of deliberation, the jury returned a verdict of guilty on all counts

---

[1] An additional count of possession of child pornography was added in a superseding indictment filed on October 10, 2013. [Rec. Doc. 61].

of the superseding indictment. [Rec. Doc. 132]. On September 24, 2015, the Court sentenced Smith to 50 months of imprisonment on each of the two possession counts and 70 months of imprisonment on each of the three counts of receiving child pornography, with all terms to run concurrently. [Rec. Doc. 147].

## B. Direct Appeal

Smith filed a timely notice of appeal through counsel. [Rec. Doc. 150]. McCann was then granted leave of court to withdraw. [Rec. Doc. 152]. Newly enrolled appellate counsel filed an *Anders* brief and motion to withdraw as counsel in the United States Fifth Circuit Court of Appeals, and Smith filed a response.[2] *United States v. Smith*, 669 Fed. App'x 232 (5th Cir. 2016). The Fifth Circuit granted the motion to withdraw and dismissed the appeal on October 4, 2016, concurring with appellate counsel's assessment that there were no nonfrivolous issues for appellate review. *Id.* at 233. It noted, however, that the record was not sufficiently developed for fair consideration of ineffective assistance claims raised in Smith's response, and so declined to consider those without prejudice to collateral review. *Id.* at 232.

## C. Instant Motion

---

[2] In *Anders v. California*, 386 U.S. 738 (1967), the Court set out standards for a court-appointed attorney wishing to withdraw from representation of a client in a direct criminal appeal because the case "lacks an issue of arguable merit." *United States v. Flores*, 632 F.3d 229, 231 (5th Cir. 2011). The attorney must conduct a "conscientious examination" of the case, and then request the court's permission to withdraw while submitting a brief identifying "anything in the record that might arguably support the appeal." *Id.* (quoting *Anders*, 386 U.S. at 744).

Smith filed the instant motion by placing it in the prison mailing system on March 31, 2017. [Rec. Doc. 205]. Here he raises a single claim of ineffective assistance by McCann in his handling of the case. [*Id.* at 4]. Under this claim he makes several allegations of deficient performance:

1. Failure to conduct a "full forensic workup." (Allegation A)
2. Failure to impeach the credibility of key prosecution witnesses. (Allegation B)
3. Failure to employ an expert witness. (Allegation C)
4. Failure to file a motion to suppress relating to or object to the admission of the government's proof of "interstate commerce." (Allegation D)
5. Failure to retrieve chain of custody records. (Allegation E)
6. Failure to challenge the timelines of prosecution expert testimony and provide alternative plausible explanations of Smith's factual innocence. (Allegation F)
7. Failure to investigate allegations of government misconduct. (Allegation G)
8. Failure to investigate Smith's alibi defense. (Allegation H)
9. Failure to expose prosecutorial misconduct. (Allegation I)
10. Failure to use electronic evidence. (Allegation J)
11. Failure to surrender Smith's case file. (Allegation K)
12. Lacking sufficient technical knowledge and expertise. (Allegation L)
13. Failing to pursue a theory that the child pornography made its way onto his computer through operation of a "Trojan Downloader." (Allegation M)

[*Id.* at 5–6]. He filed a supplemental memorandum, raising additional deficient performance allegations:

1. Failure to identify that the previously imposed sentence of home confinement was consistent with the rules and regulations of home incarceration. (Allegation N)
2. Violation of Smith's constitutional and statutory guarantee of access of all evidence material to his defense. (Allegation O)
3. Failure to challenge the Government's claim that there was a "victim" for sentencing purposes. (Allegation P)

    4. Failure to object to the sentence as based not on the severity of the offense but instead on "visceral moral outrage over subject of the contraband." (Allegation Q)

    5. Failure to object to the Court's denial of self-surrender. (Allegation R)

[Rec. Doc. 217, pp. 1–3]. He has also filed a Motion for Discovery [Rec. Doc. 222] and Motion for Evidentiary Hearing [Rec. Doc. 224], seeking additional support for his claim. The Government has responded, addressing all deficient performance allegations. [Rec. Doc. 226]. Smith then filed a reply brief, in which he raises additional bases of ineffective assistance based on trial counsel's failure to file a motion to suppress (Allegation S) or challenge the indictment as multiplicitous (Allegation T). [Rec. Doc. 230, pp. 21–22, 25–32]. Finding these allegations easily disposed of, though not properly raised in his original § 2255 motion or supplement, the Court will also address them here.

## II.
### LAW AND ANALYSIS

### A. Scope of Review

Following conviction and exhaustion or waiver of the right to appeal, the court presumes that a defendant "stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been

raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[3] *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

"It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). However, the collateral challenge process of § 2255 is no substitute for appeal. *E.g.*, *Brown v. United States*, 480 F.2d 1036, 1038 (5th Cir. 1973). As a general rule, thus, claims not raised on direct appeal may not be raised on collateral review unless the defendant shows cause and prejudice for his failure, or actual innocence. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). This is neither a statutory nor constitutional requirement, but instead a "doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

While it is generally the government's responsibility to raise the issue of procedural default, the court may still impose the bar *sua sponte*. *United States v. Willis*, 273 F.3d 592, 596–97 (5th Cir. 2001). However, this should not be done without first considering whether the defendant has been given notice of the issue and had opportunity to argue against application of the bar, and whether the

---

[3] The following claims are authorized under § 2255: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" and (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).

government has intentionally waived the defense. *Id.* at 597 (citing *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000)).

### B. Application

Smith's sole claim is one of ineffective assistance of counsel. Ineffective assistance claims may be brought for the first time in a collateral proceeding under § 2255 regardless of whether the defendant raised the issue earlier. *Massaro*, 538 U.S. at 509. Therefore review of this claim does not require a determination of whether Smith raised all aspects of this claim on direct appeal. *Id.*; *see also United States v. Johnson*, 124 Fed. App'x 914, 915 (5th Cir. 2005).

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. 466 U.S. at 687. A defendant must satisfy both prongs of the *Strickland* test in order to prevail, and the court need not approach the inquiry in the same order or address both components should the defendant fail to satisfy one. *Id.* at 697.

The first prong does not require perfect assistance by counsel; rather, defendant must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 687–88. In this review courts "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second prong, the court looks to any prejudice suffered as a result of counsel's deficient performance. This prong is satisfied if the defendant can show "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt" and that the errors were sufficiently serious to deprive the defendant of a fair trial with a reliable verdict. *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694–95). Under *Strickland*, the court may also consider the cumulative prejudice from counsel's errors. *See Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (addressing each issue of deficient performance found by the district court before considering whether the petitioner was cumulatively prejudiced thereby); *see also Dodson v.*

*Stephens*, 611 Fed. App'x 168, 178 (5th Cir. 2015) (assuming without deciding that *Strickland* calls for a cumulative prejudice analysis).

### 1. Failure to investigate, develop, and pursue alternate theories of defense (Allegations A, D, E, F, H, J, and M)

As noted above, Smith's allegations are overlapping. Many relate to counsel's decision to defend the case by focusing on the purported lack of proof that Smith was aware of the nature of the images downloaded onto his computer, rather than mounting a more technically sophisticated defense alleging that the files made their way onto Smith's computer after it was compromised through malware, hackers, Trojan downloaders, and/or Botnets. He also contends that counsel should have investigated an alibi defense for March 2012, disputed the "interstate commerce" element of the charged offenses, and sought and obtained chain of custody records for unspecified evidence.

"[C]ounsel has wide latitude in deciding how best to represent a client . . . ." *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003). The fact that a defense strategy was not successful is not enough to establish deficient performance. *Martinez v. Dretke*, 99 Fed. App'x 538, 543 (5th Cir. 2004). However, counsel does have a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

As to the hacker/computer intrusion defense posited by Smith, the trial transcript and an affidavit from counsel reflect that he (counsel) did investigate this theory by meeting with the Government's computer expert, Johnathan Bridbord, prior to trial.[4] [Rec. Doc. 226, att. 1, p. 3]. In his affidavit, McCann stated that his conversation with Bridbord convinced him that a hacker/computer intrusion defense was "implausible and unlikely to succeed," and that an alibi defense also had little chance of success. [*Id.* at 3–4].

Bridbord's trial testimony supports this contention. He explained that Smith was sophisticated in computers, using applications to prevent his identity from being tracked. [Rec. Doc. 164, p. 86]. His desktop contained antivirus and anti-spyware software. [*Id.* at 86–87]. The file-sharing software on Smith's computer also contained a search history with a keyword identified by Bridbord as consistent with child pornography, as well as records showing that significant amounts of data had been uploaded and downloaded by the user. [*Id.* at 90–91]. Bridbord described, based on his analysis of Smith's devices, how multiple child pornography files had been downloaded to the desktop from the file-sharing program, moved to an

---

[4] At the time of trial, Bridbord worked for the criminal division of the Department of Justice, as assistant director of the high tech investigative unit in the child exploitation section. [Rec. Doc. 164, p. 73]. He was accepted by the Court as an expert in computer forensics and investigation of child exploitation cases. [*Id.* at 76–79].

encrypted drive and deleted from the desktop, and later viewed from the encrypted drive.[5] [*Id.* at 120–26].

Bridbord stated that he was not able to identify any malware at work on Smith's computer, which had not been quarantined or removed by his antivirus software. [*Id.* at 102]. He also stated that he was not aware of any virus or other malware that would actually put child pornography on someone's computer. [*Id.* at 102–03]. Finally, relevant to Smith's desired alibi defense, he identified one video that was downloaded to Smith's computer on March 10, 2012. [*Id.* at 125]. However, he stated that this same video was transferred to the encrypted hard drive on July 7, 2012. [*Id.*]

At trial, counsel instead built the defense around an argument that the criminal nature of the files was not apparent to Smith at the time he downloaded them. Counsel first outlined this theory in opening argument:

> Now, what he's going to testify is that he did not know it was child pornography when it was being downloaded. Okay? And once he found out and determined that it was child pornography, then he took steps to get it off his computer, and that is the basis of Mr. Smith's defense.

---

[5] In his reply memorandum Smith complains that trial counsel failed to effectively cross-examine Bridbord and challenge the Government's other evidence, or to converse with Smith concerning Bridbord's testimony. [Rec. Doc. 230, pp. 6–16, 33–44].To this end he seizes on minor points of testimony while ignoring much larger ones, and complains about trivial misstatements in cross-examination. His allegations are grossly insufficient to show that trial counsel's performance fell below Sixth Amendment standards, and the Court will not address them individually. Further, as the Government notes, the trial transcript shows that Smith was an active participant in the cross-examination of different witnesses, appearing to contribute questions for trial counsel to ask. [Rec. Doc. 163, pp. 68–69, 108]. He does not show, however, how his participation would have been enhanced with more notice as to Bridbord or any other witness.

[Rec. Doc. 163, p. 46]. Through cross-examination, counsel elicited testimony on the ambiguous nature of some of the file names, the difficulty in visually differentiating between post-pubescent subjects just under the age of eighteen and those who were legally adults, and the fact that sometimes file names were applied deceptively to child pornography. [*Id.* at 102–03; Rec. Doc. 164, pp. 35–44]. He also showed through cross-examination that it was impossible to tell how long any of the files that had been opened were viewed, and that they therefore might have been closed after being viewed for only a second. [Rec. Doc. 164, p. 132]. Finally, he demonstrated through the testimony of Hal Hutchinson,[6] who had interviewed Smith at the Evangeline Parish Sheriff's Office on December 28, 2012, that Smith only admitted to downloading child pornography and not to viewing those files. [Rec. Doc. 163, pp. 106–07]. After Smith changed his mind and elected not to testify, the defense rested and the Court instructed the jury not to draw any inference from that decision. [*See* Rec. Doc. 164, p. 168].

Smith's conclusory allegations about the need to conduct further forensic investigations, consult other experts, or challenge chain of custody for unspecified evidence are insufficient against the record evidence showing that his theories of the case would have been readily disproven by the Government's expert. He also shows

---

[6] In 2012 Hutchinson was an officer with the Louisiana State Police assigned the Internet Crimes Against Children unit. [Rec. Doc. 163, p. 88].

no merit to his desired alibi defense, as he does not allege how far away or what length of time he was gone in March 2012. As the Government notes, Bridbord's testimony showed that very large amounts of data were downloaded to the desktop computer. Bridbord specifically stated that one download began on September 20, 2012, and was still in progress when the desktop computer was seized four days later. [Rec. Doc. 164, p. 126; *see* Rec. Doc. 163, pp. 57–59]. This fact supports the notion that downloads could take place without Smith's constant attention. Accordingly, Smith's contention that he was away for a certain period in March does not show any merit to his alibi defense. Finally, as the Government observes, under the law of this Circuit the "interstate commerce" element of the charged offenses is adequately proven through evidence that the images were transmitted over the internet.[7] *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002). Given the extensive evidence of internet involvement, any argument against this element would have been frivolous and cannot be used to support a claim of ineffective assistance. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (counsel does not perform deficiently by failing to advance a meritless argument).

---

[7] In his reply memorandum Smith relies on *United States v. Biyiklioglu*, 652 Fed. App'x 274 (5th Cir. 2016). [Rec. Doc. 230, p. 23]. There the Fifth Circuit considered a challenge to the jurisdictional nexus in wire fraud charges where the defendant had used PayPal to set up fraudulent accounts on the victims, all of whom were residents of the same state as the defendant. 652 Fed. App'x at 281–82. The Court noted that the Government had failed to identify particular wirings to PayPal or any other evidence that information was sent from the defendant's computer in Louisiana, and held that "[t]he use of the Internet alone is insufficient to establish that Biyiklioglu sent the information to PayPal across state lines." *Id.* It reversed the conviction as to those counts but noted that there was no jurisdictional challenge to the count where the Government had presented evidence of information being sent to PayPal from the defendant's computer. *Id.* at 281–82 and n. 9. Here the Government provided ample evidence that images were downloaded from the internet **to Smith's computer**, and so *Biyiklioglu* is unavailing to his position.

Based on the above, it is clear that counsel's decision to pursue a defense based on Smith not knowing the nature of the images was an informed choice based on a reasonable investigation. As Smith provides nothing to demonstrate that his theories were more likely to succeed, he cannot show adequate prejudice. Accordingly, Smith cannot satisfy either of *Strickland*'s prongs under these allegations.

### 2. Failure to retain a computer expert (Allegations C and L)

Smith claims that counsel had insufficient knowledge and training to understand the case. He contends that counsel ought to have retained an expert to determine the origins of the "planted contraband."[8] [Rec. Doc. 205, p. 5]. As with the above, these allegations reflect Smith's frustration that counsel did not find any support for and ultimately chose not to argue Smith's hacker/computer intrusion defense. Having already determined that counsel did not perform deficiently in

---

[8] In his reply memorandum, he claims additional support for this allegation under *Ake v. Oklahoma*, 470 U.S. 68 (1985), and *McWilliams v. Dunn*, __ U.S. ___, 137 S.Ct. 1790 (2017), both of which deal with the state's obligation to provide an independent mental health expert to assist with the defense once the defendant has shown that his sanity at the time the crime was committed will be an issue at trial. *Ake*, 470 U.S. at 83; *see McWilliams*, 137 S.Ct. at 1798–1801 (finding Alabama courts' decision that *Ake*'s requirements were met by a psychiatrist who provided only limited expert assistance, to be contrary to or involving an unreasonable application of clearly established federal law).

The more recent decision in *McWilliams*, thus, does not disturb the Fifth Circuit's holding, extending *Ake* to nonpsychiatric experts, that an indigent defendant has a right to expert assistance "where the evidence at issue is 'both critical to the conviction and subject to varying expert opinion," but that this right is not automatic. *Griffith v. Quarterman*, 196 Fed. App'x 237, 243 (5th Cir. 2006) (quoting *Yoney v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993)). Instead, the defendant "must 'establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial.'" *Id.* Based on Smith's failure to rebut the other evidence described above, supporting counsel's reasons for not pursuing the computer intrusion defense, he cannot show that his desired forensic evidence was critical to the conviction. Therefore any attempt to enhance his ineffective assistance allegations by showing that counsel denied him his constitutional right to an expert is without merit.

investigating this theory, the undersigned will review these allegations as failure to call a witness.

As the Government notes, complaints of uncalled witnesses are disfavored because allegations relating to that witness's testimony "are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981). In order to show adequate prejudice under *Strickland* based on an uncalled witness, the defendant must name the witness, demonstrate that he was available to testify and would have done so, set out the content of that witness's proposed testimony, and show that it would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted). This showing is required for uncalled experts and lay witnesses alike. *Id.*

Smith does not provide so much as a name for the expert who would have supported his desired theory of the case, much less an affidavit. Accordingly, he cannot show any prejudice under these allegations and so does not satisfy *Strickland*'s second prong.

### 3. *Failure to impeach credibility of prosecution witnesses, or to investigate and expose alleged prosecutorial and government misconduct (Allegations B, G, and I)*

Smith next alleges that counsel was ineffective for failing to show that prosecution witnesses had given false testimony, failing to investigate outrageous

government conduct,[9] and failing to investigate his allegations that the prosecutor misrepresented facts in evidence. [Rec. Doc. 205, pp. 5–6].

With one exception,[10] Smith does not identify which statements or even general areas of testimony were false, let alone which of the Government's five witnesses offered it. Likewise, he does not specify what the prosecutor might have misrepresented, what evidence was withheld, or how his attorney might have known or been able to show at the time of trial that a misrepresentation was being made or evidence withheld. Accordingly, his allegations relating to false testimony and prosecutorial misconduct are too vague to show any right to relief. As for his outrageous conduct allegation, it is likewise too vague to support a claim for relief. Additionally, as the Government notes, the outrageous conduct defense is only available where the defendant does not actively participate in the offense. *See United States v. Evans*, 941 F.2d 267, 271 (5th Cir. 1991). The evidence in this case, as summarized above, shows that Smith actively participated in the downloading of child pornography and possession of same. Accordingly, he cannot show that counsel was ineffective for failing to pursue this defense.

Smith cannot satisfy *Strickland*'s first prong with respect to these allegations.

---

[9] Smith states that counsel was ineffective for failing to investigate his allegations that "Government Provocateurs" had "[pandered] Child Pornography" by allowing the images to go viral and thereby "creating criminals to prosecute." [Rec. Doc. 205, p. 5].

[10] In his reply memorandum, Smith contends that the prosecution presented a video featuring an adult subject as an example of child pornography, and that it altered this video to include labels associated with child pornography. [Rec. Doc. 230, p. 18]. He provides no way of discerning the subject's age other than her appearance on adult pornography sites, which is hardly persuasive. Accordingly, the Court does not credit the allegation.

### 4. *Failure to release Smith's entire file to him (Allegations K and O)*

Smith next alleges that counsel has failed to surrender the entire case file to him. He has already made the same allegations multiple times to this court.[11] In addition to his responses to these motions, counsel provided an affidavit declaring that he has surrendered the entire case file. [Rec. Doc. 226, att. 1]. Counsel has already shown to the Court's satisfaction that he has satisfied his obligation, and Smith provides nothing to disprove this showing. He cannot use the instant motion to relitigate the issue and so has not met his burden of demonstrating deficient performance under this allegation.

### 5. *Multiplicitous indictment (Allegation T)*

---

[11] Smith filed a "Motion Requesting an Order to Obtain Copies from Former Attorney," which the undersigned granted on January 25, 2016, with an order for counsel to mail copies of all documents in the case file to Smith within thirty days. [Rec. Docs. 169, 170]. On July 5, 2016, this Court received a Motion to Compel from Smith, seeking to have counsel surrender various documents relating to his case. [Rec. Doc. 179]. The district judge granted that motion, stating that "[i]f Mr. McCann has any of the documents identified by Mr. Smith in Record Document 179 in his possession," he was ordered to send same to Smith and that if he no longer possessed the documents requested, he was ordered to file with the Court an explanation of efforts taken to comply with the Court's prior order at Record Document 170. [Rec. Doc. 182]. The compliance date was set for August 3, 2016. [*Id.*].

Smith filed a third motion seeking production of his case file on December 20, 2016. [Rec. Doc. 199]. On January 13, 2017, counsel filed a letter in response, stating that shortly after sentencing he had surrendered Smith's entire case file to Smith's sister in accordance with Smith's request. [Rec. Doc. 202]. He also maintained that he had not retained any copies and therefore had nothing more to give Smith. [*Id.*]. Based on these representations, the Court denied Smith's motion. [Rec. Doc. 203].

Smith filed yet another motion to compel on March 29, 2017, alleging that counsel was lying when he stated he had no further materials relating to Smith's case. [Rec. Doc. 204]. He also filed a supplemental motion with similar allegations. [Rec. Doc. 207]. On April 27, 2017, the Court ordered counsel to file into the record a letter detailing his efforts to return Smith's case file and denied the motions in all other respects. [Rec. Doc. 208]. Counsel complied. [Rec. Doc. 209].

Smith also contends that counsel was ineffective for failing to challenge the indictments as multiplicitous, in that he was charged with both possession and receipt of child pornography. [Rec. Doc. 230, pp. 21–22].

The rule against multiplicitous prosecutions stems from the Constitution's prohibition on double jeopardy. *United States v. Kimbrough*, 69 F.3d 723, 729 (5th Cir. 1995). Under this rule, the Government may not charge a single offense in multiple counts of an indictment. *See, e.g.*, *United States v. Heath*, 970 F.2d 1397, 1401–02 (5th Cir. 1992). To determine whether an indictment is multiplicitous, the Court looks to the number of "allowable unit[s] of prosecution." *United States v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007) (citations omitted). In child pornography possession charges, the unit of prosecution relates to the device or place where the images are stored, whereas in a receipt/distribution statute, a separate offense occurs each time the offending material is received. *Id.* at 504–05 (citing *United States v. Buchanan*, 485 F.3d 274 (5th Cir. 2007)).

Additionally, under the *Blockburger* test, two statutes relate to different offenses "only if each provision requires proof of a fact that the other does not." *United States v. Ehle*, 640 F.3d 689, 694 (6th Cir. 2011) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Accordingly, conviction of both knowingly possessing and knowingly receiving child pornography for the same activity under federal law violates the Double Jeopardy Clause, as the possession

provision does not require proof of any fact not required by the receiving provision. *Id.* at 694–95.

In this matter, however, the possession and receipt charges under the superseding indictment related to different dates. [Rec. Doc. 61]. As the Government's witnesses testified, multiple devices were seized from Smith's home. [Rec. Doc. 163, pp. 48–66, 75–85]. Accordingly, Smith fails to show a basis for challenging the original or superseding indictment for multiplicity and so cannot show deficient performance by counsel on that basis.

### 6. *Failure to file a motion to suppress (Allegation S)*

In his reply memorandum Smith alleges that trial counsel rendered ineffective assistance by failing to file a motion to suppress or otherwise challenge the investigation. [Rec. Doc. 230, pp. 25–32]. He offers again his allegations of a "high tech lynching" and theory of viruses placing child pornography on the computers of innocent internet users, which we disregard based on the evidence presented at trial in this matter. He also challenges the Government's investigative methods that led to the identification of child pornography on his servers. As he notes, courts have ruled that agency reports and their underlying data, designating images as child pornography, are inadmissible hearsay. *See United States v. Bates*, 665 Fed. App'x 810, 814–15 (11th Cir. 2016). However, he points to no authority undermining investigators' ability to use these reports to establish probable cause in an application

for a search warrant. He also challenges the Louisiana State Police's warrantless search in May 2012 of eMule, the peer-to-peer software he was using for files indicative of child pornography. [*See* Rec. Doc. 163, pp. 49–52]. Such searches are widely upheld as not violating the Fourth Amendment, as they do not actually search the contents of a defendant's computer but instead only obtain information and files over which a defendant does not have a reasonable expectation of privacy.[12] *E.g.*, *United States v. Dodson*, 960 F.Supp.2d 689, 694 (W.D. Tex. 2013). Accordingly, Smith fails to show deficient performance under these allegations.

### 7. Failure to raise sentencing objections (Allegations N, P, Q, and R)

Smith next alleges deficient performance based on counsel's failure to offer the following sentencing-related objections: a) that the previously imposed sentence of home confinement was consistent with the rules of home incarceration; b) that the Government had not satisfied the "proximate cause" requirement for determining that the children depicted in the pornography were victims under 18 U.S.C. § 2259; c) that the sentence was based on "visceral moral outrage" rather than the actual severity of the offense; and d) that the Court denied Smith's request for self-surrender, prejudicing his right to an appeal. [Rec. Doc. 217, pp. 2–3].

---

[12] Smith also relies on a recent decision from the Tenth Circuit. *See United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016). That case, however, deals with warrantless search of a defendant's email by the National Center for Missing and Exploited Children, which the Tenth Circuit deemed to be a government actor. Under Fourth Amendment/reasonable expectation of privacy analysis, it is clearly distinguishable to the search of file-sharing software at issue here.

### a. Home confinement

The precise nature of the objection Smith would have had his attorney raise under this allegation is unclear. He states that McCann "was ineffective for failing to identify his client's previously imposed sentence of 'Home Confinement' to be consistent with the Rules and Regulations of 'HOME INCARCERATION.'" [Rec. Doc. 217, p. 2]. The order setting conditions of pre-trial release for Smith shows that his travel was restricted to this district, that he was required to submit to location monitoring, and that he was forbidden access to minors and the internet. [Rec. Doc. 42, p. 2]. Among the options provided for location restriction programs were home detention and home incarceration. The difference between the two programs is that a person in home detention may leave his residence for various pre-approved activities, such as mental health treatment and attorney visits, while a person in home incarceration is on "24-hour-a-day lock-down" except for medical necessities, court appearances, and "other activities specifically approved by the court." [*Id.*]. Smith was ordered to home detention as a condition of his pre-trial release. [*Id.*]. Though he claims that the conditions of his release actually aligned with the restrictions of home incarceration, the record refutes his allegation. He thus shows no basis for an objection, much less how such an objection might have led to any prejudice cognizable under *Strickland*.

### b. Proximate cause

Smith's next ground for objection is the Government's failure to satisfy the "proximate cause" requirement of 18 U.S.C. § 2259 in identifying victims of his crimes. This statute relates to the payment of restitution to victims of child sexual exploitation offenses. 18 U.S.C. § 2259. The "proximate cause" requirement arises from the Supreme Court's decision in *Paroline v. United States*, __ U.S. ___, 134 S.Ct. 1710 (2014), where the Court held that an award of restitution was proper under § 2259 "only to the extent [that] the defendant's offense proximately caused the victim's losses." 134 S.Ct. at 1722.

In this matter, as the Government notes, Smith was not ordered to pay restitution. [*See* Rec. Doc. 147]. Therefore § 2259 and the proximate cause requirement under *Paroline* have no application to his case, and he again fails to show grounds for an objection.

### c. Unfairness of Sentencing Guidelines

Smith next contends that counsel was ineffective for failing to argue that the sentence, based on the Guidelines range provided at U.S.S.G. § 2G2.2, was based on moral outrage instead of "the actual severity of the alleged offense committed." [Rec. Doc. 217, p. 2]. As the Government observes, the Fifth Circuit rejected this argument and upheld the role of the Sentencing Guidelines in child pornography

offenses in *United States v. Miller*, 665 F.3d 114 (5th Cir. 2011).[13] *See United States v. Duke*, 788 F.3d 392, 397–98 (5th Cir. 2015). Additionally, courts have frequently found that counsel does not perform deficiently, but instead makes a reasonable tactical decision, when he decides not to attack a sentencing range on policy grounds. *See United States v. Jensen*, 2012 WL 1997708, *2 (N.D. Tex. Apr. 10, 2012) (collecting cases); *see also United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) ("[W]e have held that counsel is not ineffective for failing to raise a claim that courts in the controlling jurisdiction have repeatedly rejected.")

### d. Denial of request for self-surrender

Finally, Smith contends that McCann performed deficiently by not objecting when the Court denied his request for self-surrender after he had submitted his appeal. [*See* Rec. Doc. 165, pp. 7, 55]. However, Smith does not provide any legitimate grounds for an objection. After a defendant has been found guilty of an offense and sentenced to a term of imprisonment, a judicial officer may only order that person's release pending appeal if he finds

> (A)    by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . **and**
> (B)    that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

---

[13] In *Miller*, the Fifth Circuit upheld the Sentencing Guidelines as a factor to be considered in sentencing child pornography offenders, despite criticism about the lack of an empirical basis to the relevant provision. 665 F.3d at 121–22. The Court noted there that, "[e]mpirically based or not, the Guidelines remain the Guidelines" and stated that it would "not reject a Guidelines provision as unreasonable or irrational simply because it is not based on empirical data and even if it leads to some disparities in sentencing." *Id.* (quotations omitted).

(i) reversal,

(ii) an order for a new trial,

(iii)    a sentence that does not include a term of imprisonment, or

(iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1) (emphasis added). Smith does not show that either of the above requirements were met. Accordingly, he cannot show that there was any grounds for an objection to the Court's ruling.

All of the objections Smith presents in his sentencing-related allegations are meritless. Accordingly, counsel did not perform deficiently in failing to raise them. *Parr*, 572 F.3d at 256. Smith does not satisfy *Strickland*'s first prong under any of these allegations.

### 8. *Cumulative error*

Under *Strickland*, a court may also consider the cumulative prejudice from counsel's errors. *See Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (stating that it would review each instance of deficient performance found by the district court before considering "whether [the petitioner] was cumulatively prejudiced thereby"); *see also Dodson v. Stephens*, 611 Fed. App'x 168, 178 (5th Cir. 2015) (assuming without deciding that *Strickland* calls for a cumulative prejudice analysis). Here, however, even in instances where the Court might assume for the sake of argument that Smith could show deficient performance, he is unable

to show any prejudice. Accordingly, he cannot prevail on a theory of cumulative error.

## C. Motion for Discovery

Smith has also filed a Motion for Discovery [Rec. Doc. 222] once again seeking his entire case file from trial counsel Randal McCann, as well as any materials relating to his case in the possession of Assistant Public Defender Wayne Blanchard and a long list of items allegedly in the Government's possession.

Rule 6(a) of the Rules Governing § 2255 Proceedings only allows discovery at the court's discretion and "for good cause." This rule "does not authorize fishing expeditions." *United States v. Fields*, 761 F.3d 443, 478 (5th Cir. 2014) (quoting *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) (discussing Rule 6 in § 2254 proceedings)). Instead, a defendant only demonstrates good cause under Rule 6(a) "where specific allegations before the court show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Id.* at 483–84 (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)).

The issue of McCann's fulfillment of his duty to produce Smith's case file has already been considered by this Court multiple times and will not be reopened. Smith fails to identify what he believes is missing from his case file that might still be in Blanchard's possession, and how it relates to his claims (most of which relate specifically to McCann's representation, despite Smith's representations to the

contrary in the instant motion). Finally, the numerous requests for production from the Government amount to nothing more than a fishing expedition. Smith provides no specific support for his contention that these documents will provide the evidence that he is unable to locate in the record for his claims of ineffective assistance and factual innocence. Instead, it appears that he merely wishes to "explore [his] case in search of its existence," which is not a proper use of § 2255. *United States v. Taylor*, 2012 WL 1833904, *1 (W.D. La. May 15, 2012) (quoting *Ward*, 21 F.3d at 1367)).

Smith's conclusory allegations that the materials demanded in the instant motion will support his motion for relief under § 2255 do not rise to the level of "good cause," and so the motion for discovery must be denied.

### D. *Entitlement to an evidentiary hearing*

Smith has requested an evidentiary hearing on his claims. The court must grant a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *e.g.*, *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). No evidentiary hearing is required where the defendant's claims are "either contrary to law or plainly refuted by the record." *United States v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989). Furthermore, "[c]onclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). A defendant must present "independent

indicia of the likely merit of [his] allegations" to show that he is entitled to a hearing on his § 2255 motion. *Id.* (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)).

Smith's claims, where not already contrary to law, are entirely based on self-serving and unsubstantiated allegations. The filings and record rebut his claims and demonstrate conclusively that he is not entitled to relief. Therefore no hearing is required.

## III.
### CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the original and amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Rec. Doc. 205] and Motion for an Evidentiary Hearing [Rec. Doc. 224] be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District

Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

**THUS DONE** this 15th day of September, 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE